**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JUAN SANTIAGO REANO, *et al.*,<br><br>                    Petitioners,<br><br>          v.<br><br>ERIC ROKOSKY, *et al.*,<br><br>                    Respondents. | Civil Action No. 26-1745 (JXN)<br><br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Petitioner Juan Santiago Reano's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging his continued detention.[1] (ECF No. 1.) Respondents filed an opposition to the Petition (ECF No. 5), Petitioner replied (ECF No. 6), and Respondents sur-replied (ECF No. 7). The Court considered the parties' submissions in support of and opposition to the Petition and decides the Petition without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Petitioner's Petition is **DENIED**.

## I.     BACKGROUND

Petitioner, a native of Mexico, originally unlawfully entered the United States on April 1, 2012. (*See* ECF No. 5 at 2; *see also* ECF No. 5-1 at 2.) On the same day, Petitioner encountered a

---

[1] Petitioner and Melbi Avila-Mejia jointly filed the instant Petition. (*See* ECF No. 1.) On February 20, 2026, pre-answer from Respondents, the Court granted the Petition as to Petitioner and Melbi Avila-Mejia and ordered the Respondents to provide bond hearings to both within seven days of the date of the Court's Order. (*See* ECF No. 3.) The Court also ordered Respondents to file an expedited answer if they believed the case was factually distinguishable from other 8 U.S.C. § 1225(b)(2) cases decided by the Court. (*Id.*) Respondents provided Avila-Mejia with the Court-ordered bond hearing, and she was released on bond. (*See* ECF No. 7.) Respondents filed an expedited answer as to Petitioner, arguing that Petitioner's facts are distinguishable from the § 1225(b)(2) cases. (*See* ECF No. 5.)

United States Border Patrol agent. (ECF No. 5-1 at 4.) It was determined that Petitioner "had unlawfully entered the United States from Mexico, at a time and place other than as designated by the Immigration Officers of the United States of America." (*Id.*) Petitioner "admitted to illegally crossing the international boundary without being inspected." (*Id.*) Petitioner voluntarily departed the United States on or about April 2, 2012. (*Id.*)

Petitioner re-entered the United States, and on February 9, 2013, he again encountered a United States border patrol agent. (ECF No. 5-2 at 3-4.) It was determined that Petitioner had not entered the United States at a designated Port of Entry and was therefore not admitted or paroled into the United States. (*Id.* at 4.) Petitioner admitted to illegally entering the United States and did not claim a fear of returning to his country. (*Id.*) On February 12, 2013, a Notice and Order of Expedited Removal was issued. (ECF No. 5-3.)  Petitioner was removed from the United States on February 14, 2013. (ECF 5 at 2; ECF No. 5-4 at 3.)

Petitioner again re-entered the United States at an unknown date and time. (*See* ECF No. 5 at 2; *see also* ECF No. 5-4 at 3.) On February 20, 2026, Immigration and Customs Enforcement's ("ICE") Enforcement and Removal Operation ("ERO") Newark agents encountered Petitioner during a targeted enforcement operation. (ECF No. 5 at 2.) Petitioner admitted that he illegally re-entered and remained in the United States following a prior removal. (ECF No. 5-4 at 3.) On the same day, Petitioner was arrested pursuant to a Warrant of Removal/Deportation, Form I-205. (*Id.*) Petitioner was processed as a reinstatement of removal and served with a Notice of Intent/Decision to Reinstate Prior Order. (ECF No. 5-5.) Petitioner remains detained pursuant to his reinstated final order of removal.

On February 20, 2026, Petitioner filed the instant Petition arguing, among other things, that the government may not detain him under 8 U.S.C. § 1225(b)(2), and he is entitled to a bond

hearing under 8 U.S.C. § 1226(a). (*See generally* ECF No. 1.) On February 25, 2026, Respondents filed a letter response arguing that Petitioner is lawfully detained and is subject to a final order of removal under 8 U.S.C. § 1231(a). (*See* ECF No. 5.) On March 2, 2026, Petitioner replied, challenging the constitutionality of his arrest. (*See* ECF No. 6.) Respondents responded. (ECF No. 7.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The burden is on the petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    DISCUSSION

In his Petition, Petitioner argues that he is unlawfully detained under 8 U.S.C. § 1225(b)(2). (*See generally* ECF No. 1.) In response, Respondents submit that Petitioner is not detained under 8 U.S.C. § 1225(b)(2); rather, he is detained under 8 U.S.C. § 1231(a) pursuant to a final order of removal. (*See generally* ECF No. 5.) In his reply brief, Petitioner argues for the first time that (1) he is entitled to an individualized bond hearing after prolonged detention; (2) his traffic stop and resulting arrest violated his Fourth Amendment rights; and (3) his arrest violated his Fifth Amendment equal protection rights. (*See generally* ECF No. 6.)

Petitioner has a reinstated final order of removal. The record shows that (1) on February 12, 2013, Petitioner was issued a Notice and Order of Expedited Removal; (2) on February 14, 2013, he was removed from the United States; and (3) he unlawfully re-entered the United States at some point.

Based on the above, ICE reinstated Petitioner's final order of removal on February 20, 2026. Under 8 U.S.C. § 1231(a)(5), when a noncitizen reenters the United States after having been removed under a prior order, "the prior order of removal is reinstated from its original date" and the noncitizen "shall be removed under the prior order." The Supreme Court has made clear that detention in this posture is governed by § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 529–30 (2021) (explaining that once a removal order is reinstated, the noncitizen is in a post-final-order posture and detention is governed by § 1231's removal-period framework). Accordingly, Petitioner's detention arises under § 1231(a).

Section 1231 states in relevant part that "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). This 90-day detention is mandatory. *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) ("While removal proceedings are in progress, most [noncitizens] may be released on bond or paroled. After entry of a final removal order and during the 90-day removal period, however, [noncitizens] must be held in custody.") (internal citation omitted). Petitioner was taken into custody on February 20, 2026. As a result, Petitioner's detention is still within the 90-day mandatory detention period, rendering any challenge to his § 1231 detention premature.

Petitioner's Fourth Amendment argument that ICE agents' stop of his vehicle and/or his arrest was unlawful does not warrant habeas relief orf release from custody. (ECF No.

4

6 at 3-7.) "[T]he remedy for an unlawful arrest is the suppression of evidence obtained therefrom, not release from custody." *See Noori v. Soto*, No. 26-951, 2026 WL 631642 at * 2 (D.N.J. March 5, 2026) (quoting *Valenzuela v. Semaia*, No. 5:25-cv-02853, 2025 WL 3635578, at *4 (C.D. Cal. Nov. 3, 2025) (citing *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984))). The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if . . . an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039; *see also Naranjo v. Uhls*, No. 4:25-cv-05756, 2025 WL 3771447, at *2 (S.D. Tex. Dec. 31, 2025) ("It does appear the Government has adopted a widespread practice of taking aliens into custody when they appear for court. . . . Absent a connection that undermines the lawfulness of Petitioner's detention pursuant to the immigration laws, argument that such practice has unintended consequences or is poor policy is simply beyond the jurisdiction afforded upon inquiry on habeas corpus."); *Rezaee v. President of the United States*, No. 6:25-cv-1140, 2025 WL 4051609, at *5 (M.D. Fla. July 29, 2025) ("Thus, even if Petitioner's initial arrest was unlawful, her detention pending removal may stand.") Although "the legality of [Petitioner's] initial arrest may be at issue in his removal proceedings, it does not provide this Court a basis for concluding that his current detention violates the INA or the Constitution." *Suraj Suraj v. Bondi*, No. 2:25-cv-02699, 2026 WL 507682, at *3 (W.D. Wash. Feb. 24, 2026).

Finally, Petitioner argues that Respondents violated his Fifth Amendment equal protection rights with the "decision to target him [] based on his national origin and the existence of an immigration record, not on individualized suspicion of criminal activity." (ECF No. 6 at 8.) Petitioner claims recent "commentary and litigation" suggest racial and ethnic "profiling is particularly prevalent in 'targeted enforcement operations' and traffic stops." (*Id.*) To make out an equal protection claim, Petitioner must show that he was treated differently from other similarly

situated persons and that this different treatment was the result of intentional discrimination based on his national origin. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Petitioner has not satisfied these requirements. Petitioner alleges only that the decision to target him appears to have been based on his national origin and existence of an immigration recordthe existence of an immigration record, and that profiling is prevalent in targeted enforcement operations. Petitioner does not submit facts of other similarly situated individuals. Accordingly, based on the record before the Court, the Petition is denied.

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, the Petition (ECF No. 1) is **DENIED**. An appropriate Order accompanies this Opinion.

**DATED**: 5/6/2026

_____
**JULIEN XAVIER NEALS**
**United States District Judge**